345 So.2d 1129 (1977)
STATE of Louisiana
v.
James BENNETT.
No. 58536.
Supreme Court of Louisiana.
January 24, 1977.
On Rehearing May 16, 1977.
*1131 R. Scott Ramsey, Jr., McElroy & Ramsey, Houma, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Ed Leonard, Walter J. Senette, Jr., Bernard E. Boudreaux, Jr., Asst. Dist. Attys., for plaintiff-appellee.
Mark A. Mareau, Louisiana Coalition on Jails and Prisons, R. James Kellogg, American Civil Liberties Union of La., Inc., New Orleans, amicus curiae.
SANDERS, Chief Justice.
A St. Mary Parish Grand Jury indicted the defendant, James Bennett, for attempted aggravated rape, a violation of LSA-R.S. 14:42 and 14:27. The defendant pled not guilty and not guilty by reason of insanity. A unanimous jury found him guilty as charged. The defendant received a sentence of twenty years at hard labor.
The defendant appeals, relying on four assignments of error for reversal of his conviction and sentence. Defense counsel specifically abandoned four other assignments of error in brief.

ASSIGNMENT OF ERROR NO. 1
After a sanity hearing, the court concluded that the defendant possessed the capacity to understand the proceedings against him and to assist in his defense.[1] See LSA-C.Cr.P. Art. 641. The defendant asserts four grounds for a reversal of this finding.[2]
Defense counsel contends that the court failed to appoint the sanity commission in accordance with Louisiana Code of Criminal Procedure Article 644(A), as the court appointed the commission more than seven days after ordering the mental examination, and as only one physician served on the commission.
Article 644(A) provides:

*1132 "Within seven days after a mental examination is ordered, the court shall appoint a sanity commission to examine and report upon the mental condition of the defendant. The sanity commission shall consist of at least two and not more than three physicians who are licensed to practice medicine in Louisiana, and have been in the actual practice of medicine for not less than three consecutive years immediately preceding the appointment. No more than one member of the commission shall be the coroner or any one of his deputies."
On September 19, 1975, the court granted a defense motion to suspend the prosecution and to appoint a sanity commission. Yet on September 23, 1975, the defendant filed another motion, identical to the first. On that same day, the court again suspended the prosecution and ordered a commission to examine the defendant and report on his present mental capacity to proceed. On September 29, 1975, the court named Dr. David Rees, Psychiatric Director of the Acadiana Mental Health Center and Dr. G. P. Musso, St. Mary Parish Coroner, to serve on the commission. Both doctors examined the defendant on October 8, 1975. However, the State moved for the appointment of another physician to assist Dr. Rees in his examination of the defendant. On November 3, 1975, the court named Dr. N. N. Anthony to the commission. On the following day, Dr. Anthony examined the defendant. On November 5, 1975, the court held a sanity hearing and found the defendant legally sane.
The record does not support the defense assertion that only Dr. Anthony served on the sanity commission. The court appointed three physicians to report on the defendant's mental status, two of whom testified at the sanity hearing. This commission satisfied the physician requirement of Article 644(A).
As more than seven days elapsed between the court's first ordering a mental examination and the court's appointing a sanity commission, the commission was untimely appointed. However, the court did appoint a commission within ten days of the first order and within six days of the second. This delay does not invalidate the proceedings. No prejudice resulted since the defendant received the benefit of an examination by a sanity commission. See LSA-C. Cr.P. Art. 921.
The defendant further argues that during the sanity hearing the court improperly admitted a letter from Dr. Rees to the judge conducting the sanity hearing. This letter contains the result of Dr. Rees' mental examination of the defendant. (R. p. 58) He complains that the State failed to lay the proper predicate for its introduction.
When the State introduced the letter, the Assistant District Attorney failed to offer any proof of its genuineness. See LSA-R.S. 15:456. However, assuming the letter to be inadmissible, the defendant was not prejudiced, for Dr. Rees' testimony at the sanity hearing tracked the contents of his letter. LSA-C.Cr.P. Art. 921.
Finally, the defendant assigns as reversible error the court's finding the defendant competent to stand trial. He specifically objects to the court's refusal to suspend the sanity hearing and order a further evaluation of defendant's mental retardation and intelligence quotient. (The examining physicians reported that the defendant had a "moderately severe mental retardation" but did not fix his exact I.Q.)
Louisiana law presumes the defendant's sanity. LSA-R.S. 15:432. The defense carries the burden of proving by a clear preponderance of the evidence that as a result of a mental disease or defect he lacks the capacity to understand the proceedings against him or to assist in his defense. LSA-C.Cr.P. Art. 641; State v. Morris, La., 340 So.2d 195 (1976); State v. Veal, La., 326 So.2d 329 (1976); State v. Marks, 252 La. 277, 211 So.2d 261 (1968). Moreover, the judge's determination of a defendant's present mental capacity is entitled to great weight and his ruling will be reversed only if it is clearly erroneous. State v. Morris, supra; State v. Flores, La., 315 So.2d 772 (1975).
*1133 Defense counsel relies on portions of Dr. Anthony's testimony and State v. Square, 257 La. 743, 244 So.2d 200 (1971) to support his argument.
Dr. Anthony testified as follows:
"[DEFENSE COUNSEL]: Q. And at this time, do you believe that the defendantI know that you have already answered this but I would like a clearer answerIs the defendant fully capable of assisting counsel in his defense, in your professional opinion?
"[DR. ANTHONY]: A. Again, I must state that I find the defendant to be well-oriented; to be aware of his environment, and I consider that he can be of assistance in assisting counsel.
"Q. Can he be of full assistance in assisting counsel in this matter?
"A. My feeling is that it would be helpful to have the defendant subjected to further clinical psychological evaluation, regarding his I.Q.
"Q. With what purpose in mind, what end purpose in mind?
"A. With a purpose of defining his level of mental retardation.
"Q. And this would be of possibly a greater help in determining whether or not he was fully capable of assisting counsel in his defense?
"[DEFENSE COUNSEL]: Well, Your Honor, in view of the testimony, I believe it might be proper to further subject the defendant to further mental tests in order to determine
* * * * * *
"BY THE COURT: I would imagine that a person with a college degree or a great deal of education would be of more assistance to counsel in assisting in his defense than a person would be of a low educational level and possibly some mental retardation. But within his capabilities, if I understand what the law is, within his capabilities, if he can assist counsel in his defense.
* * * * * *
"[DR. ANTHONY]: I would say that within his capabilities, I'd find him able to assist counsel. Now, when he asked me about his I.Q., you know, I feel that there are tests that can nail this down, if this has to be nailed down for the satisfaction of the Court. But I certainly find the defendant's orientation good enough to assist counsel in his defense.
"[DEFENSE COUNSEL]: Q. And can you state this beyond a reasonable certainty?
"[DR. ANTHONY]: A. Yes."
(Sanity Hearing Tr. pp. 29-32)
Subnormal intelligence alone does not constitute legal insanity. State v. Morris, supra; State v. Hargrove, La., 330 So.2d 895 (1976); State v. Augustine, 252 La. 983, 215 So.2d 634 (1968). Louisiana Code of Criminal Procedure Article 641 sets forth the test for incapacity to proceed, as follows:
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense."
Both examining physicians reported that the defendant possessed the capacity to understand the proceedings against him and to assist in his defense.
In State v. Square, supra, in a letter by a member of the sanity commission, the physician presumably stated that a clinical psychologist's examination was necessary to determine the defendant's mental capacity to stand trial. We found the lower court erred in prohibiting defense counsel from questioning the physician as to his opinion on the necessity of such further examination. However, the present case is distinguishable. While Dr. Anthony stated that further tests would establish his precise intelligence quotient, both Dr. Rees and Dr. Anthony testified that the defendant possessed the capacity to understand the proceedings against him and to assist in his defense. Their testimony revealed that the defendant could distinguish right from wrong, was not psychotic, was able to communicate, was fully aware of his circumstances *1134 and environment, and was well oriented.
We conclude that the trial judge did not abuse his discretion in denying the motion to suspend the proceedings and order further tests. We also conclude that he properly found the defendant competent to stand trial.

ASSIGNMENT OF ERROR NO. 3
During his opening statement, defense counsel attempted to read the penalty provisions of the statutes under which the State charged the defendant, LSA-R.S. 14:42 and 14:27. The court upheld the State's objection to the reading of the penalty provisions to the jury. In complaining of this ruling, the defendant states:
"The main thrust of the defendant's defense in this case was to show the jury that the defendant should be found not guilty by reason of insanity. In order to do this it was felt that the jury had to understand not only the consequences of a verdict of not guilty by reason of insanity, but it should also understand the consequences of a guilty verdict."
In State v. Nero, La., 319 So.2d 303 (1975), we held that it was proper for the trial judge to prohibit the defense counsel's reading possible sentences to the jury during his opening statement. This Court stated:
"When defendant avails himself of the opportunity to make an opening statement under Article 765(4) of the Louisiana Code of Criminal Procedure, he must confine his remarks to the explanation of the nature of the defense and the evidence by which he expects to establish it. State v. Spencer, 257 La. 672, 243 So.2d 793 (1971). See also State v. Mehan, 262 La. 611, 264 So.2d 581 (1972)."

ASSIGNMENT OF ERROR NO. 4
The defense complains of a ruling which upheld a State objection. He contends that the ruling precluded the defense from clarifying defendant's mental status. The objection arose as follows:
"[DEFENSE ATTORNEY]: Q. And did you notice anything about Mr. Bennett's personality?
"[DR. ANTHONY]: A. Yes. Reviewing his past history and his own evaluation about himself and law enforcement agencies, I would consider him to be sociopathic.
* * * * * *
"Q. Would you say a sociopathic personality would be a type of person that would not learn from their mistakes?
"A. Yes, sir.
"Q. Would you believe that by being punished or sent to jail, one would learn from his mistakes?
"[ASSISTANT DISTRICT ATTORNEY]: I object, Your Honor. We are getting into a realm of question of punishment as opposed to what the man's mental status is.
"BY THE COURT: The objection is sustained.
"[DEFENSE ATTORNEY]: Please note an objection.
"[DEFENSE ATTORNEY]: Q. Again, speaking hypothetically, a person suffering from a sociopathic personality or condition, would they learn from punishment?
"[DR. ANTHONY]: A. They would not."
(Tr. pp. 384-385)
Assuming that the trial judge erroneously sustained the objection, we note that the same testimony was elicited in response to the next question, to which the State offered no objection. Hence, the defense has no cause to complain. LSA-C.Cr.P. Art. 921.

ASSIGNMENT OF ERROR NO. 7
The defendant timely submitted a special written charge to the trial judge wherein he requested that the court include a reading of Louisiana Code of Criminal Procedure Articles 652, 654, 655, and 657 in its general charge to the jury. The trial judge denied the request on the ground that the *1135 general charge included the substance of the requested special charge.
We agree with the trial judge. The general charge contained the substance of Article 652, relating to the burden of proof as to the defense of insanity.
The judge further instructed the jury as follows:
"If you return a verdict of not guilty by reason of insanity, our law provides that the defendant must be committed to a state mental institution from which he shall not be released except upon order of this Court, based upon a determination that he is no longer criminally insane and a menace to himself or to society."
(Tr. p. 485)
The defendant asserts that State v. Babin, La., 319 So.2d 367 (1975), requires the inclusion of the full text of Articles 654, 655, and 657 in the general charge. He contends that the short summary could be overlooked by the jurors.
In Babin, the trial judge declined to read Articles 654, 655, and 657 as requested or to explain their substance to the jury. There we stated:
"`The issue of insanity having been fairly raised, the jury may return one of three verdicts, guilty, not guilty, or not guilty by reason of insanity. Jurors, in common with people in general, are aware of the meanings of verdicts of guilty and not guilty. It is common knowledge that a verdict of not guilty means that the prisoner goes free and that a verdict of guilty means that he is subject to such punishment as the court may impose. But a verdict of not guilty by reason of insanity has no such commonly understood meaning. . . . It means neither freedom nor punishment. It means the accused will be confined in a hospital for the mentally ill until the superintendent of such hospital certifies, and the court is satisfied, that such person has recovered his sanity and will not in the reasonable future be dangerous to himself or others. We think the jury has a right to know the meaning of this possible verdict as accurately as it knows by common knowledge the meaning of the other two possible verdicts.'
* * * * * *
"In view of our interpretation of Art. 803 of the C.Cr.P., and in order to prevent a possible miscarriage of justice, flowing from the imprisonment of one who should be hospitalized because a jury does not understand the effects of an insanity verdict, we hold that the instructions here at issue must be given if they have been specially requested by defendant or by the jurors.

"We prefer not to prescribe any particular form that such instructions must take. However, when the trial judge has not included in the general charge an instruction explaining or quoting the law applicable to a verdict of not guilty by reason of insanity, then upon defendant's request he must read defendant's wholly applicable, wholly correct suggested charge to the jury. Art. 807 C.Cr.P." (Italics ours.)
We hold that the judge's general charge adequately explained the legal consequences of a verdict of not guilty by reason of insanity. Hence, the trial judge properly declined to give the special charge. LSAC.Cr.P. Art. 807. See State v. Watkins, La., 340 So.2d 235 (1976).
Assignment of Error No. 7 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., dissents.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice, dissenting.
I respectfully dissent. In addition to the state's not complying with the formalities set out in Article 644 of the Code of Criminal Procedure, the trial judge was not offered sufficient medical evidence on which he could have concluded that the accused possessed the mental capacity to proceed to trial. Two doctors (one a psychiatrist, the other a licensed physician) each examined *1136 Bennett for a very brief time and neither administered nor ordered the administering of psychological or other tests. At the sanity hearing, the doctors therefore presented scant medical evidence on which a decision as to defendant's present sanity could be based. The doctors' repeated recitations that defendant possessed the capacity to assist in his defense were legal conclusions within the judge's province and were not bases on which the trial judge could have concluded that defendant had the capacity to understand the proceedings against him and to assist in the conduct of his defense.

ON REHEARING
DENNIS, Justice.
Defendant timely filed an application for rehearing contending we failed to consider his argument that the criminal justice system of this State subjects him and other mentally retarded persons to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution.
The mentally retarded offender poses unique problems for the criminal justice system: his reduced understanding challenges traditional notions of criminal responsibility; his physical presence at trial is offset by an abstraction of mind which may be severe enough to invoke the ban against trying a defendant in absentia; his need for specialized care and training argues against his commitment upon conviction to a penal institution ill-equipped to habilitate him. Defendant and those filing amici curiae briefs in this matter have urged our integrated consideration of these extremely difficult issues and have advocated sweeping changes in the law. Although we are not insensitive to the arguments raised, the assignments of error perfected for our review on appeal present only the narrow questions considered in our original opinion, and many of defendant's proposals for reform are more properly the subject of legislative than judicial action.
We granted a rehearing to reevaluate the trial court's determination that defendant was competent to stand trial in light of defendant's contentions that the sanity commission appointed to examine him did not conduct a thorough examination and that the findings upon which the court based its ruling were inconclusive. Having reviewed the record of the sanity hearing, we have decided the court failed to apply the appropriate standard in assessing defendant's capacity to proceed and that the sketchy reports of the examining physicians did not justify a decision as to defendant's sanity at that time. Accordingly, we remand the case to the trial court for a redetermination, after further testing, of defendant's competency to stand trial.
It is fundamental to an adversary system of justice that "a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103, 113 (1975). The prohibition is codified in our law, which directs the suspension of criminal proceedings against one found to be mentally incompetent, La.C.Cr.P. arts. 642 and 648, and defines mental incapacity to proceed as follows:
"Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense." La.C.Cr.P. art. 641.
Mere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity. State v. Morris, 340 So.2d 195 (La.1976); State v. Augustine, 252 La. 983, 215 So.2d 634 (1968). However, when mental retardation, alone or in combination with a mental disease or defect, is so severe as to impair a defendant's capacity to understand the object, nature and consequences of the proceedings against him, to consult with counsel in a meaningful way, and to assist rationally in his defense, that defendant is, within the contemplation of our law, incompetent to *1137 stand trial. State v. Morris, supra; State v. Flores, 315 So.2d 772 (La.1975); State v. Augustine, supra. Compare, Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 825 (1960).
The sanity hearing redounded with statements by the two examining physicians that defendant was able to assist counsel, but there was scant testimony to support this conclusion. It was said that defendant was oriented as to time and place, that he was not psychotic, and that he understood he was charged with a crimealthough he did not fully appreciate the gravity of the charge. Both doctors agreed, however, that defendant has "moderately severe mental retardation." Dr. Neville Anthony, who examined defendant for only twenty minutes and conducted no clinical tests, placed defendant's I.Q. in the high 80's or low 90's; Dr. David Rees, also without benefit of testing, estimated that defendant's I.Q. ranged between 35 and 50. When Dr. Anthony suggested that further clinical evaluation of defendant would be helpful in determining his level of mental retardation and his ability to assist counsel, defense counsel requested that the proceedings be interrupted so that additional tests might be conducted. The trial court rejected this request, reasoning that:
"I would imagine that a person with a college degree or a great deal of education would be of more assistance to counsel in assisting in his defense than a person would be of a low educational level and possibly some mental retardation. But within his capabilities, if I understand what the law is, within his capabilities, if he can assist counsel in his defense."
From this statement we infer that the trial court's ultimate conclusion that defendant was able to understand the proceedings and to assist counsel was grounded upon defendant's ability to understand and assist "within his capabilities." Such a determination begs the crucial question: were defendant's capabilities sufficient to give him a rational as well as factual understanding of the proceedings against him and to enable him to consult with counsel with a reasonable degree of rational understanding? See, State v. Morris, supra; State v. Augustine, supra; Dusky v. United States, supra. It was insufficient for the court to find that defendant was not psychotic, was oriented as to time and place and was aware of his surroundings. See, Drope v. Missouri, supra; Dusky v. United States, supra. Dr. Rees testified that a severely retarded individual with an I.Q. of 10 might be aware of his surroundings, and thus he could presumably assist counsel and understand the proceedings against him "within his capabilities." Due process, however, requires a level of effective participation by an accused in criminal proceedings against him. That defendant was found to know the difference between right and wrong would have been relevant in determining his criminal liability, but was totally irrelevant to the issue of his competency to stand trial. See, Note, 6 Loyola Univ.L.J. 678, 679 (1975); Note, 4 Columb.Hum. Rights L.Rev. 239, 244 (1971).
In addition to the somewhat general statements regarding defendant's condition, the members of the sanity commission offered the court their opinions that defendant was able to assist counsel in the proceedings against him. Although it may be impossible in a pretrial competency hearing to avoid reliance upon psychiatric prediction concerning the accused's capabilities, the trial court may not rely so extensively upon medical testimony as to commit the ultimate decision of competency to the physician. One commentator has cogently observed:
"To the extent that psychiatric testimony is utilized, however, it should be descriptive of the defendant's condition rather than conclusory. Like criminal responsibility, incompetency is a legal question; the ultimate responsibility for its determination must rest in a judicial rather than a medical authority. In relying on conclusory psychiatric testimony, often expressed in the same terms as the ultimate incompetency question, courts shift responsibility for the determination to psychiatrists who have no special ability *1138 to decide the legal issue. Indeed, there is repeated evidence that psychiatrists often misunderstand the test of incompetency and confuse it with the test of criminal responsibility. Medical opinion about the defendant's condition should be only one of the factors relevant to the determination. A defendant's abilities must be measured against the specific demands trial will make upon him, and psychiatrists have little familiarity with either trial procedure or the complexities of a particular indictment." Note, 81 Harv.L.Rev. 454, 470 (1967). See also, Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, 616 (1965).
The conclusory reports by Drs. Rees and Anthony that defendant was able to assist counsel were not, without supporting information which was lacking at the hearing, entitled to reliance by the court. See, State v. Augustine, supra, at footnote 3.
The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. See, Note, 6 Loyola Univ.L.J. at 684; Note, 4 Columb.Hum.Rights L.Rev. at 245; see also, United States v. Masthers, 176 U.S.App.D.C. 242, 539 F.2d 721 (1976). Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. See, State v. Augustine, supra; Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, at 616; Note, 6 Loyola Univ.L.J. at 684-85; Note, 4 Columb.Hum.Rights L.Rev. at 245.
At the inquiry into defendant's competency, these vital factual considerations were supplanted by the physicians' conclusion of law that defendant was able to assist counsel. Only the court, not the doctor, is qualified to make this decision. Indeed, there is ample evidence that psychiatrists often misunderstand the legal test of incompetency and confuse it with the test of criminal responsibility. 81 Harv.L.Rev. at 470; Robey, Criteria for Competency to Stand Trial: A Checklist for Psychiatrists, 122 Am.J. of Psychiatry, at 616. Furthermore, the trial court's misconceptions as to the degree of rational participation which the law requires of a criminal defendant enabled it to overlook the disturbing discrepancy between the doctors' estimates of defendant's intelligence level. Whether defendant's I.Q. is 35 or 90 bears importantly on his ability to stand trial.
On original hearing we correctly noted that because of the presumption of sanity in our law, the defense carries the burden of proving by a preponderance of the evidence that as a result of a mental disease or defect he lacks the capacity to understand the proceedings against him or to assist in his defense. However, when, as here, the defendant is an indigent and forced to rely upon the findings of a sanity commission appointed by the court to examine him, he has a right to demand that the examination be thorough and cannot be *1139 held responsible for the commission's failure to complete its task. Compare, State v. Gilmore, 332 So.2d 789 (La.1976). The failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial. Drope v. Missouri, supra; Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). In view of the examining physicians' own admissions that they could not be certain of their results without further clinical evaluation of defendant, we find that the court erred in failing to order additional testing upon defendant's request.
Unlike mental illness, which is a variable state, difficult to measure retrospectively, mental retardation is a more static condition and hence its effect upon defendant's capacity to stand trial can be as easily determined now as it could have been contemporaneously with the trial. Therefore, we find it unnecessary to set aside the jury verdict at this time, but remand for another sanity hearing following a complete reexamination of defendant. Compare, Pate v. Robinson, supra, and Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Should the trial court find that defendant was incompetent to stand trial, the verdict must be set aside and the defendant remanded to a proper mental institution for custody, care and treatment as long as the lack of capacity continues. La. C.Cr.P. art. 648. On the other hand, after receiving additional evidence the court may determine that defendant was competent to stand trial. In this event, it may allow the sentence to stand or amend it in light of the new evidence prior to the beginning of execution of the sentence. La.C.Cr.P. art. 881. The right to appeal from any action of the trial court is reserved to defendant. If the defendant is found to have been competent to stand trial, in the absence of a further appeal, the conviction and sentence will be affirmed. See, Jackson v. Denno, supra; State v. Simmons, 328 So.2d 149 (La.1976).
For the reasons assigned, the case is remanded to the district court for further proceedings in accordance with this opinion.
SANDERS, C. J., dissents, adhering to the views expressed on original hearing.
SUMMERS and MARCUS, JJ., dissent.
NOTES
[1] The Honorable Robert E. Johnson presided at the sanity hearing.
[2] We will not consider grounds urged for the first time on appeal, nor matters not briefed or argued. See LSA-C.Cr.P. Art. 841; State v. Phillips, La., 337 So.2d 1157 (1976); State v. Blanton, La., 325 So.2d 586 (1976); State v. Carlisle, La., 315 So.2d 675 (1975).