KING, Judge.
This appeal presents the issues of whether the defendant had the mental capacity to be tried and whether the evidence was sufficient to sustain a guilty verdict when the defendant claimed he was insane at the time of the offense.
Milbert Mangrum Huckaby (hereinafter referred to as defendant) was charged by grand jury indictment with second degree *406 murder, a violation of R.S. 14:30.1. The defendant pled not guilty and not guilty by reason ⅝ of insanity. After a trial by jury, he was found guilty as charged. The trial court sentenced defendant to the mandatory sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. Defendant timely appealed his conviction, designating the following assignments of error:
(1) The trial court erred by requiring the defendant to go to trial, when one of the doctors of the sanity commission recommended the defendant be evaluated further for his present mental condition prior to the proceedings; and
(2) The evidence was insufficient to sustain a conviction since the evidence showed that the defendant was insane at the time of the offense.
For the reasons hereinafter set forth, we affirm the defendant’s conviction.
FACTS
On the evening of Friday, September 13, 1985, Melba Simmons, who shared a house with Cornelius “Bob” Huckaby and his son, the defendant, went outside to use the outhouse. After a few minutes, the defendant got up, left the house and walked outside. Shortly thereafter, Mr. Huckaby, who had been watching television, heard Ms. Simmons shout, “Bob, help me.” As he ran around the house, he saw Ms. Simmons trying to come towards him with the defendant standing behind her. When he told the defendant to leave her alone, Ms. Simmons fell face down. As Mr. Huckaby bent down to assist her, he noticed she was covered with blood. He looked back at the defendant, and saw that his son had a pocket knife in his hand. When Mr. Huc-kaby asked for defendant’s help in assisting Ms. Simmons, the defendant said, “Daddy, let her die.” As Mr. Huckaby persisted in his efforts to get the victim to a hospital, the defendant stepped towards him and “let out a crazy scream.” The defendant then ran away from the scene.
Sheriff's deputies later arrived and found the defendant inside the Huckaby residence sitting in a chair. The deputies noticed that the defendant’s clothes were stained with blood. After the defendant was twice read his rights, he led the deputies to the location where he stabbed Ms. Simmons. At that point, the deputies observed a large area of blood. The defendant was arrested and charged with the second degree murder of Melba Simmons, who died of multiple stab wounds.
ASSIGNMENT OF ERROR NUMBER 1
In this assignment of error, the defendant alleges that the trial court erred in requiring him to stand trial because one of the two members of the sanity commission recommended further evaluation of the defendant’s mental capacity.
A sanity commission, consisting of two physicians, was appointed to determine defendant’s mental capacity to stand trial. One of the physicians, Dr. Etienne Brown, found that the defendant was sane and was completely capable of assisting in his defense. Dr. Brown’s evaluation was based on a lengthy consultation with the defendant on November 19th, in which he determined that: “On this examination, the patient was ambulant, alert, and active. He was completely oriented as to the time and place and circumstances ... [T]he patient had shown no evidence of insanity and no evidence of mental incompetence at anytime.”
The defendant was evaluated by Dr. Gilíes Morin on November 7th. At this examination, the defendant was uncooperative and would not answer the doctor’s questions. Dr. Morin’s report stated that: “In my opinion, I felt that he did fulfill the Bennett criteria and did not answer or told me that he did not remember out of choice rather than out of some type of emotional problem. In all fairness, however, I feel that he should be in a maximum security hospital setting where he could be evaluated further with the use of psychological testing.”
On November 27th, a sanity hearing was held to determine defendant’s competency *407 to stand trial. Based on the reports of the sanity commission, the trial judge concluded that the defendant had the capacity to proceed to trial.
Defendant contends that when one of the doctors of a two-member sanity commission recommends that the defendant be further examined at a mental institution prior to requiring him to go to trial, the court should give the defendant the benefit of the doubt caused by the conflicting medical opinions.
Mental incapacity to proceed is defined in LSA-C.Cr.P. Art. 641 as follows:
“Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.”
The defendant carries the burden of showing that he is incompetent to stand trial by a clear preponderance of the evidence. State v. Machon, 410 So.2d 1065 (La.1982); State v. Weber, 364 So.2d 952 (La.1978); State v. Morris, 340 So.2d 195 (La.1976). The trial court’s determination as to the defendant’s capacity is entitled to great weight on appeal and will not be overturned absent an abuse of discretion. State v. Brogdon, 426 So.2d 158 (La.1983), aff’d 457 So.2d 616 (La.1984), cert. den., 471 U.S. 1111, 105 S.Ct. 2345, 85 L.Ed.2d 862, rehearing den., — U.S. -, 105 S.Ct. 3547, 87 L.Ed.2d 670 (1985); State v. Rochon, 393 So.2d 1224 (La.1981); State v. Sanders, 463 So.2d 1022 (La.App. 3rd Cir. 1985). Where there is conflicting medical testimony, the trial judge’s determination is entitled to especially great weight. State v. Williams, 381 So.2d 439 (La.1980); State v. Jones, 376 So.2d 125 (La.1979); State v. Morris, supra.
Defendant asserts that the court should have fully determined his mental capacity before proceeding with the trial since one of the doctor’s reports was inconclusive. It has been established that while a thorough mental examination is necessary, the final determination of a defendant’s competency to stand trial must rest in a judicial authority and is a legal issue rather than a medical issue. State v. Qualls, 377 So.2d 293 (La.1979). In making this determination, the judge should reach an independent evaluation of defendant’s capacity to participate in his defense, rather than depending on the conclusory reports of the sanity commission. State v. Jones, supra.
Since the final determination as to the defendant’s competency rests with the trial judge, the court’s decision cannot be overturned unless it is found to be clearly erroneous. The appropriate considerations that the trial judge should apply in determining the defendant’s capacity to proceed were outlined by the Louisiana Supreme Court in State v. Bennett, 345 So.2d 1129 (La.1977), where it stated:
“The decision as to a defendant’s competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused’s ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response *408 to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.” (Citations omitted.) State v. Bennett, 345 So.2d 1129, at page 1138 (La.1977).
Although Dr. Morin suggested that the defendant should have been further examined, he also concluded that the defendant fulfilled the Bennett criteria. As Dr. Brown was able to make a more thorough examination of the defendant, he stated conclusively that the defendant was competent to stand trial. Dr. Brown testified:
“[I]t was my conclusion that the patient is sane, that he has good recall, that he understands the charges against him, he understands the consequences ... He certainly understood the charges that were against him, and he seemed to be perfectly capable of assisting in his defense.”
The Louisiana Supreme Court has determined that the defendant carries the burden of establishing that he lacks the capacity to understand the object, nature, and consequences of the proceedings against him, and that he is unable to assist the counsel in his defense in a meaningful way. State v. Narcisse, 426 So.2d 118 (La.1983), writ den., 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176, rehearing den., 464 U.S. 1004, 104 S.Ct. 515, 78 L.Ed.2d 702 (1983).
In light of the fact that both members of the sanity commission determined that the defendant was able to proceed under the criteria set forth in Bennett, supra, the trial judge’s determination that the defendant had the capacity to proceed is not clearly erroneous. As defendant has not carried his burden of showing that he was incompetent to stand trial, this assignment of error lacks merit.
ASSIGNMENT OF ERROR NUMBER 2
By this assignment, defendant contends that the evidence was insufficient to find him guilty of second degree murder. He also alleges that the evidence showed he was insane at the time of the offense.
When sufficiency of evidence is raised on appeal, the reviewing standard is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Edwards, 400 So.2d 1370 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluation under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983).
The defendant was found guilty of second degree murder which is defined as the killing of a human being when the offender has the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1.
In this case, the evidence overwhelmingly supports defendant’s conviction. The defendant’s father, Cornelius Huckaby, saw the defendant follow the victim, Ms. Simmons, outside. When Mr. Huckaby responded to the victim’s cries for help, he found her lying in front of the defendant, covered with blood. As he looked up, he saw that the defendant was holding a knife in his hand. The defendant tried to prevent his father from taking the victim to the hospital, saying, “Daddy, let her die.” When sheriff’s deputies arrived at the scene, they found the defendant sitting inside wearing blood-stained clothes. After the defendant was read his rights, he showed the deputies the site where he stabbed the victim.
While he was in jail, the defendant told a trustee the details involving Ms. Simmons’ death. The trustee testified that the defendant said he waited for the victim outside and stabbed her 20 to 30 times. According to the trustee’s testimony, the defendant related the story two to three times with no changes other than to add more detail.
*409 Viewing the evidence m the light most favorable to the prosecution, it appears that any rational trier of fact would have found the defendant guilty beyond a reasonable doubt.
The defendant claimed that he was insane at the time of the offense. In Louisiana, both by statute and jurisprudence, an adult defendant is presumed to be sane and responsible for his actions. LSA-R.S. 15:432; State v. Guidry, 450 So.2d 50 (La.App. 3rd Cir.1984), writ den., 476 So.2d 344 (La.1985). To rebut this presumption, the defendant, must show by a clear preponderance of the evidence that he suffered from a mental disease or defect which rendered him incapable of distinguishing right from wrong at the time of the offense. LSA-C. Cr.P. Art. 652; LSA-R.S. 15:432; State v. David, 425 So.2d 1241 (La.1983), on appeal after remand, 468 So.2d 1126 (La.1985), supp. op., 468 So.2d 1133 (La.1985); State v. Machon, supra; State v. Chapman, 438 So.2d 1319 (La.App. 3rd Cir.1983).
In the present case, witnesses testified that the defendant had changed from a friendly, outgoing person, before his imprisonment on a prior drug charge, into a cold, introverted individual after his release. His parents testified that the defendant had acquired some unusual habits, such as washing his hands from 8 to 30 times a day. Several incidents were also related in which the defendant would laugh aloud for no obvious reason.
The defendant testified that he and Ms. Simmons had several confrontations prior to her death. Witnesses corroborated the fact that the defendant and the victim did not get along. The defendant further testified that he and the victim had argued the night of her death and that she was stabbed 27 times but he did not know by whom.
A reviewing court will reverse a trial judge’s ruling that a defendant is sane only when it finds under the facts and circumstances of the case that a rational fact finder, viewing the evidence in light most favorable to the prosecution, could have concluded that defendant proved by a preponderance of the evidence that he was insane at the time of the offense. State v. Roy, 395 So.2d 664 (La.1981); State v. Monk, 454 So.2d 421 (La.App. 3rd Cir. 1984), writ den., 459 So.2d 537 (La.1984).
Based on the facts of this case, it cannot be maintained that the defendant met his burden of proving that he was insane at the time of the offense. One of the members of the sanity commission, Dr. Brown, testified that he concluded from his evaluation that defendant was sane at the time of the offense. Although Dr. Morin’s report was not conclusive, the doctor did state that he felt the defendant was uncooperative by choice rather than because of an emotional or mental problem.
The defendant’s father witnessed the defendant’s state of mind at the time of the offense. The only abnormal behavior he noticed was thé defendant’s strange scream. Deputies arriving soon after the incident testified that defendant did not say or do anything unusual while they were present. In view of these facts, we conclude that the evidence is sufficient to sustain a finding that the defendant failed to prove his insanity by a preponderance of the evidence. This assignment of error lacks merit.
For the reasons given above, the defendant’s conviction is affirmed.
AFFIRMED.