635 So.2d 752 (1994)
STATE of Louisiana
v.
Dale HOWARD. (Two Cases)
Nos. 93 KA 1253, 93 KA 1254.
Court of Appeal of Louisiana, First Circuit.
April 8, 1994.
Lori L. Nunn, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee State.
David Price, Baton Rouge, for defendant-appellant.
Before WATKINS, SHORTESS, and FOGG, JJ.
SHORTESS, Judge.
Dale Howard (defendant) was charged by bill of information with distribution of cocaine. LSA-R.S. 40:967(A). He pled not guilty and, after trial by jury, was found guilty as charged. After a hearing, the trial court found defendant to be a fourth felony habitual offender. The trial court subsequently sentenced defendant to 20 years at hard labor without benefit of parole, probation, *753 or suspension of sentence.[1] He has appealed, urging three assignments of error, but, in his brief to us, expressly abandoned assignment of error number one.
On April 21, 1992, defendant sold a twenty-dollar bag of cocaine to an undercover Baton Rouge City Police officer. In exchange for the cocaine, the police officer gave defendant a marked twenty-dollar bill. Immediately after the sale of cocaine to the undercover officer, defendant was arrested by another police officer. At the time of his arrest, defendant was in possession of the marked twenty-dollar bill.

ASSIGNMENT OF ERROR NUMBER TWO:
Defendant contends the trial court erred in denying his motion for new trial. He argues the motion should have been granted based on information received after trial relating to his drug usage and competency to stand trial. He contends he was not allowed to fully develop the information because the trial court denied his request for a recess to locate an expert witness to explain the results of his blood tests. Thus, he argues the trial court erred in denying the motion without a full record.
According to the minutes, on the first day of trial, March 17, 1993, prior to voir dire, defense counsel informed the court that defendant had revealed to him he had used cocaine prior to arriving at the courthouse, but counsel declined to present evidence to the trial court on the issue. The trial court ordered Dr. Hypolite Landry, the East Baton Rouge Parish Coroner, to examine defendant. After the examination and based on Landry's testimony, the trial court determined defendant was in control of his faculties, able to understand the proceedings against him, and able to assist counsel. Defense counsel objected to the trial court's ruling. Defendant agreed to submit to a blood test; the trial court subsequently ordered defendant to submit to two blood tests, one test that day and one test the following day. Landry was ordered to draw the blood and submit it for laboratory analysis of cocaine content. At the end of the March 17, 1993, proceedings, defendant was remanded to the custody of the sheriff; he spent the night in jail.
Defense counsel sets forth that the trial was completed on March 18, 1993, and on April 14, 1993, he obtained the results of the blood tests which reflected the presence of cocaine in defendant's blood on both days of trial. He filed a motion for a new trial on April 29, 1993, and asserted that during the trial he was not aware defendant was under the influence of any narcotics, particularly cocaine.
At the hearing on the motion for new trial, Landry testified that, according to the tests, on the first day of trial defendant's blood contained 189.8 nanograms of cocaine or metabolizers per milliliter [of blood]. On the second day of trial, his blood contained 1751.5 nanograms of cocaine or metabolizers per milliliter [of blood]. Landry testified the nanograms that showed up in the tests were a combination of cocaine and metabolizers, the components that break down cocaine. However, he stated he was unable to break down the amounts of each substance. Landry also testified he asked others about the test results, but no one was able to explain how much of each component was contained in defendant's blood.
*754 Nevertheless, Landry testified that he examined defendant on the first day of trial and found him to be competent and that the amount of cocaine in defendant's system did not affect his abilities to proceed with the trial. Landry did not examine defendant on the second day of trial. Thus, he was unaware of defendant's abilities on that day. Landry stated he was unable to make a presumption on the effect of the cocaine on defendant on the second day of the trial.
At this point in the hearing, defense counsel asked for a recess in order to obtain an expert who could explain the test results. The State did not object to the recess. However, the trial court denied defense counsel's request, denied his motion for new trial, and gave the following reasons:
In this case the defendant entered the courtroom, the negotiations and so forth prior to trial aren't going to be part of this record, but he quite lucidly told his attorney that he didn't want to go to trial and asserted that he had had some self-ingested cocaine the night before the trial.
The court observed the defendant, the court noticed the communication between the defendant and his attorney, and the court ordered that he be examined by Dr. Landry. Dr. Landry did a typical medical evaluation where he got a history from the patient, or from the defendant, made his evaluations and has testified today that based on that [date's] interview that he understood the nature of the proceedings, in his opinion, and was able to assist counsel.
This court ordered that blood be drawn on both days. On the next day the recollection of the court is that there was no assertion made on the second day that the defendant was unable to assist counsel on that date or that he did not understand the nature of the proceedings. The court's recollection is that that issue was not raised again, nor was the objection made ongoing at the commencement of the first day[`s] trial.... [O]n the second date of the trial the court had the opportunity to observe the defendant, as did the entire jury have an opportunity to hear the defendant, who actually took the stand.
An appellate court will not have the ability to hear the words as they came out personally from the defendant, or to judge his stability and eye contact and general presence and wherewithal that he had and displayed that day. But this court has no doubt, no doubt whatsoever, that this man knew the nature of the proceedings and was able to assist counsel. He very succinctly testified about his condition, his history of drug abuse. The court remembers in great detail, makes reference to his testimony to the appellate court and with only the following caveat being added; that it was very coherent, cogent, concise, it was delivered in a clear understanding manner and the court, this court, thinks it would be a very bad precedent to override what I consider to be a judicial determination based on the observations that this court made.
Notwithstanding these reasons from the trial court, we have a problem with its approach because it seems that under the peculiar circumstances of this case, defendant may have been denied due process of law.
In State v. Bennett, 345 So.2d 1129 (La. 1977), the Louisiana Supreme Court, on rehearing in a mental retardation case, articulated the appropriate standard in assessing a defendant's capacity to proceed in a mental incapacity scenario. Mental incapacity as such is not an issue here. The only point made by the defense is that the intentional ingestion of cocaine by defendant on the day of trial may have adversely affected his competency.
Bennett certainly gave us guidance as to how to proceed in such a case as this, where competency must be determined. The court instructed:
The decision as to a defendant's competency to stand trial should not turn solely upon whether he suffers from a mental disease or defect, but must be made with specific reference to the nature of the charge, the complexity of the case and the gravity of the decisions with which he is faced. Appropriate considerations in determining whether the accused is fully aware of the nature of the proceedings include: whether he understands the nature *755 of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Facts to consider in determining an accused's ability to assist in his defense include: whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
(Citations omitted.)
We certainly acknowledge that the trial court, in keeping with its important duty to assess a defendant's competency, keenly observed defendant's conduct and demeanor in court, then verbalized his impression for the record before deciding the issue. The problem, however, stems from Landry's inability to help the court by separating the nanograms of cocaine from the metabolizers in defendant's system. He also could not give an expert opinion as to whether defendant was competent on day two. On that day, defendant took the stand, notwithstanding a long felony conviction record, and presented the defense that he sold the undercover policeman baking soda rather than cocaine. He did so despite a crime lab report identifying the substance as cocaine.
We feel that a more judicious handling of this issue would have been to grant defendant's motion for recess made after Landry's testimony, to which the State did not object, to give defendant an opportunity to get evidence, if such exists, to help him in his quest for a new trial.
The burden of proof is on defendant to show by a clear preponderance of the evidence that he was incompetent to proceed because of his cocaine ingestion. After an evidentiary hearing, if defendant satisfies his burden of proof, the trial court should reconsider defendant's motion for new trial.
Accordingly, we remand this case to the trial court and order it to grant a recess and evidentiary hearing with expert testimony on the issue of what effect, if any, defendant's ingestion of cocaine had on his competency on day two of his trial.
Should the trial court determine that no reasonable ground exists to find defendant's competency was impaired on day two of the trial, the case should be returned to us, as we maintain jurisdiction over it, to complete our appellate review. Defendant is reserved the right to apply for supervisory review of the final determination of the trial court as to his competency.
CASE REMANDED FOR COMPETENCY DETERMINATION.
FOGG, J., dissents.
NOTES
[1] The trial court erroneously imposed a sentence of 20 years at hard labor without benefit of parole, probation, or suspension of sentence. The longest prescribed sentence for a first conviction of distribution of cocaine is 30 years. See LSA-R.S. 40:967(B)(1). According to Revised Statute 15:529.1(A)(3)(a), defendant should have been sentenced to a prison term of not less than the longest term prescribed for a first conviction of this crime and in any event not less than 20 years. Therefore, defendant should have been sentenced to 30 years at hard labor without benefit of probation or suspension of sentence. See LSA-R.S. 15:529.1(G). Although the trial court erred by imposing an illegally lenient sentence, this court will not correct the sentence as the error is in defendant's favor and the State has not appealed the sentence. See State v. Fraser, 484 So.2d 122 (La.1986).

Additionally, we note the trial court imposed the sentence without benefit of parole. Although parole eligibility is not denied by either Revised Statute 40:967(B)(1) or Revised Statute 15:529.1, we find no error in denying parole eligibility since defendant was independently ineligible for parole under Revised Statute 15:574.4(A)(1).