STEPHEN J. WINDHORST, Judge.
12Pefendant, Joshua Johnson, was convicted of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2 *964 (count one) and forgery in violation of La. R.S. 14:72 (count two). He was sentenced as a second felony offender on count one to an enhanced sentence of twenty-four years imprisonment at hard labor without the benefit of probation or suspension of sentence, the first year without the benefit of parole, probation, or suspension of sentence. On count two, the trial court sentenced defendant to ten years imprisonment at hard labor. This appeal followed.[1]

FACTS

On Wednesday, January 25, 2012, defendant burglarized a house located in Wag-gaman belonging to Shennette Julien. Taken from the house were a |scheckbook, jewelry, shoes, clothes, video games, iPods, watches, cell phones, and a television. In addition, one of the stolen checks, made out to defendant for $500.00, was cashed.
When defendant was arrested, he admitted to participating in the burglary. He also admitted that he forged and cashed one of the victim’s checks for $500.00. After his arrest, defendant’s house was searched and items belonging to Ms. Ju-lien were found. In addition, defendant’s fingerprints were found in Ms. Julien’s house, and his thumbprint was on the forged check.
At trial, Ms. Julien testified that in January of 2012 only she and her three children had keys to and permission to be in her house. She stated that she does not know defendant, nor had she given defendant permission to be in her house. Ms. Julien further stated that defendant apologized for burglarizing her home in person and by mail.[2]

DISCUSSION

In defendant’s sole assignment of error, he argues that the trial court erred in finding him competent to stand trial and in rejecting defense counsel’s subsequent attempts to revisit the issue of defendant’s competency. He contends his incompetence was evidenced on several occasions throughout the proceedings. First, despite the trial court’s explanation to the contrary, defendant maintained the belief that he could not be prosecuted because of a due process violation. Second, defendant claims he was unable to completely understand the roles of his defense counsel, the prosecutor, and the judge. And third, unable to maintain a consistent defense at trial, defendant “suddenly decided to give up and throw himself on the mercy of the jury.” In light of defendant’s “profound confusion and irrational factions throughout the proceedings,” he argues the trial court erred in finding him competent to stand trial. The State contends otherwise.
Prior to trial, on June 25, 2012 the defense moved for the appointment of a competency commission, asserting that defendant “is unable to understand the nature of these proceedings, and [is] unable to make decisions regarding his case.” On June 26, 2012, the trial court stayed the proceedings and ordered a competency examination of defendant be conducted by Doctors Salcedo and Richoux. On August 8, 2012, the doctors submitted their findings to the trial court, and recommended that defendant be found competent to stand trial.[3]
*965 On August 15, 2012, the court conducted the competency hearing. The State and defense stipulated to the doctors’ findings and defense counsel then offered argument for his position that defendant was not competent to stand trial. He explained that prior to the competency hearing, the State had offered a plea deal to defendant, in which he would receive a sentence of six years as a second felony offender based on the charges of simple burglary of an inhabited dwelling and forgery. In exchange for that sentence, defendant would have to plead guilty to the charged offenses in addition to a charge of obscenity defendant allegedly committed while incarcerated in the Jefferson Parish Correctional Center. At the time of the offered plea deal, defendant indicated that he was willing to plead to the burglary and forgery charges, but refused to plead to the obscenity charge, on | ;;the basis that he felt his constitutional rights were being violated by the plea offer’s contingency on his plea to the obscenity charge. Out of concern that defendant was not able to understand his rights or the nature of the proceedings, defense counsel moved for the competency hearing.
Defense counsel further explained that on the day of the competency hearing, the State offered defendant another plea deal: the obscenity charge would be dismissed in exchange for a plea of guilty to the charged offenses of burglary and forgery. Defendant refused this offer, maintaining that because his constitutional rights were violated by the prior plea offer, the charged offenses must be dismissed. Defense counsel informed the court that he explained to defendant that he was incorrect; counsel advised defendant that he had no right to a plea offer, that the State had the authority and capacity to charge defendant with whatever crime it determines it can reasonably prove at trial, and that the State was the sole determiner as to what charges can be accepted or refused. Defendant still disagreed with counsel. As a result, counsel informed the court that he disagreed with the doctors’ findings and that he believed defendant did not understand what was going on. At the conclusion of the hearing, the trial court found defenddnt competent to proceed to trial. The defense lodged an objection to this finding of competency. A discussion then ensued regarding the setting of a trial date. During this discussion, defense counsel continued to maintain that defendant did not understand the proceedings.
At a subsequent hearing on September 17, 2012, defense counsel again raised his concerns about defendant’s competency, based on'defendant’s response to the District Attorney’s plea offer, that if the defendant pled guilty to the charged offenses of burglary and forgery, defendant would receive a sentence of eight years, and if he did not plead, the State would proceed with multiple offender 1 ^proceedings. Defendant refused this plea deal, maintaining that his Fourteenth Amendment rights had been violated and that he should be released. The trial court denied the defense’s request for a second competency *966 hearing. The defense did not lodge an objection to this denial. On appeal, defendant argues that this and the trial court’s initial finding of competency were both erroneous.
It has long been established that a person whose mental condition is such that he lacks the capacity to understand the nature of the proceedings against him, and is unable to assist counsel, may not be subject to trial. State v. Holmes, 06-2988 (La.12/2/08), 5 So.3d 42, 54, cert. denied, 558 U.S. 932, 130 S.Ct. 70,175 L.Ed.2d 233 (2009). Thus, in order to proceed with trial, a defendant must be “legally competent.” Id. Although Louisiana’s statutory scheme for assessing this legal competency “jealously guards a defendant’s right to a fair trial,” Louisiana law presumes defendant’s sanity. Id., 5 So.3d at 55 (citations omitted). Thus, the burden is upon the accused to establish by a clear preponderance of the evidence that the mental incapacity delineated in La. C.Cr.P. art. 641 exists. State v. Comeaux, 514 So.2d 84 (La.1987); State v. Crossley, 48,149 (La.App. 2 Cir. 06/26/13), 117 So.3d 585.
La. C.Cr.P. art. 641 provides: “Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense.” Thus, the determination of whether a defendant possesses the mental capacity to stand trial is a twofold test: (1) whether the defendant understands the consequences of the proceedings and (2) whether he has the ability to assist in his defense by consultation with counsel. State v. Pollard, 12-346 (La.App. 5 Cir. 12/18/12), 106 So.3d 1194, 1199, writ denied, 13-0140 (La.6/21/13), 118 So.3d 408 (citation omitted). Although a trial court may receive expert medical testimony on the issue |7of a defendant’s competency to proceed to trial, the ultimate determination of capacity rests alone with the trial court. Holmes, supra. A reviewing court owes the trial court’s determination of a defendant’s mental capacity great weight, and its ruling should not be disturbed in the absence of manifest error. Id.
In State v. Bennett, 345 So.2d 1129, 1138 (La.1977), the Louisiana Supreme Court set forth considerations for determining whether the accused is fully aware of the nature of the proceedings:
whether he understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction.
Additionally, in determining an accused’s ability to assist in his defense, considerations should include:
whether he is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial.
Bennett, 345 So.2d at 1138 (citations omitted).
In determining whether the trial court manifestly erred in finding defendant *967 competent to stand trial, this Court must review the evidence considered by the trial court at the time of defendant’s competency hearing. See La. C.Cr.P. - art. 641 (“Mental incapacity to proceed exists when ... a defendant presently lacks the capacity....”) (emphasis added). In this case, the record indicates that the trial court, in assessing defendant’s competency, considered the sanity commission’s report and defendant’s behavior during pre-trial proceedings.
|sThe trial court had several interactions with defendant. Defendant first appeared before the trial court on April 23, 2012, for his arraignment. Then, on May 31, 2012, the court held a preliminary examination and a hearing on defendant’s motion to suppress his statement. At the conclusion of this proceeding, during which defendant testified, the court denied the motion to suppress and found probable cause to hold defendant. Finally, defendant appeared before the court for the competency hearing on August 15, 2012, where the court found him competent to stand trial.
In considering the first prong of the competency analysis, whether defendant was fully aware of the nature of the proceedings, Bennett instructs reviewing courts to consider: whether the defendant understands the nature of the charge and can appreciate its seriousness; whether he understands what defenses are available; whether he can distinguish a guilty plea from a not guilty plea and understand the consequences of each; whether he has an awareness of his legal rights; and whether he understands the range of possible verdicts and the consequences of conviction. Bennett, supra. Several of these considerations are pertinent here.
First, there is evidence in the record that defendant understood the nature of and appreciated the seriousness of the charges against him as the doctors concluded that defendant “had absolutely no problems being able to give excellent quality answers concerning his understanding of the charges and proceedings against him.” Additionally, defendant’s testimony offered at the suppression hearing indicates he understood the proceedings. While being cross-examined regarding his post-arrest statement to the police, defendant explained that he quickly changed his stance of innocence to guilt because Sergeant Hunt “made a promise” to “talk to the DA and do something for” defendant if he admitted to the 19burglary. When questioned what Sergeant Hunt’s promise was, defendant was unable to give a direct answer, but explained:
I can guess what the promise was because I was booked with simple burglary; I was booked with forgery; I was booked with theft; and I was booked with possession of stolen goods. When I went to my [arraignment], my charges was that read on the paper that I still have was burglary and forgery, and it did not say possession of stolen goods, and it did not say theft. So, I’m guessing that — I’m guessing he must have talked to the DA and got the theft charge and the possession of stolen goods threw out, because it was not stated on my paper that I received for my [arraignment], that I received when I went to [arraignment].
This testimony illustrates that defendant had an apparent ability to distinguish between the charges with which he was booked and upon which he was arraigned, and an apparent understanding of the district attorney’s role in the process. In consideration of this and the doctors’ independent assessment, we find defendant understood the nature of the proceedings against him.
Second, defendant was able to distinguish between a guilty plea and a not guilty plea and understood the conse *968 quences of each. Defense counsel explained that defendant was willing to plead to the burglary and forgery charges, but not to the obscenity charge. Defendant’s willingness to plead guilty to one charge, but not another, indicates an ability to understand the difference between a guilty plea and a not guilty plea and the consequences of each. In addition the record shows that, although defense counsel was unaware of defendant’s actions, defendant had contacted Ms. Julien and asked her to have the charges against him dismissed. Defendant’s belief that he could persuade Ms. Julien may have played a factor in his unwillingness to plead guilty.
Finally, we find defendant was aware of his legal rights since he consistently asserted that his constitutional rights had been violated. It stands to reason that to claim the violation of a right requires awareness of that right.
|10In considering the first prong of the competency analysis, whether defendant can assist counsel in his defense, Bennett instructs reviewing courts to consider: whether the defendant is able to recall and relate facts pertaining to his actions and whereabouts at certain times; whether he is able to assist counsel in locating and examining relevant witnesses; whether he is able to maintain a consistent defense; whether he is able to listen to the testimony of witnesses and inform his lawyer of any distortions or misstatements; whether he has the ability to make simple decisions in response to well-explained alternatives; whether, if necessary to defense strategy, he is capable of testifying in his own defense; and to what extent, if any, his mental condition is apt to deteriorate under the stress of trial. Bennett, supra.
Drs. Salcedo and Richoux concluded that defendant’s “ability to assist counsel appears to be essentially unimpaired, at least in terms of his psychiatric status.” Although defendant “appears to have some points of disagreement with his attorney, and views the legal procedures which have taken place in his case as perhaps not reflecting- what he termed ‘due process.’ This did not appear to be a manifestation of a mental disorder, or an expression of any other mental illness.”
Defendant’s testimony at the suppression hearing indicates he was able to recall and relate facts pertaining to his actions and whereabouts at certain times. When asked if he was arrested on February 24, 2012, defendant replied: “The 24th or the 25th, I’m not sure.” Defendant was also able to identify the police officer who arrested him and the officer to whom he spoke at the detective bureau. And lastly, defendant was capable of testifying in his own defense since he testified at the suppression hearing.
^Although several of the Bennett considerations under the second prong of the competency test are not relevant under the facts of this case, their irrelevance does not favor or disfavor a finding of competency.
Considering the foregoing, we determine that at the time of the competency hearing, defendant understood the nature of the proceedings and had the ability to assist in his defense, and therefore the trial court did not commit manifest error in finding defendant competent to proceed to trial.
In consideration of the trial court’s denial of the defense’s request for a second competency hearing, it is noted that the defense did not object to this ruling. La. C.Cr.P. art. 841(A) provides that “An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence.” Here, the defense failed to object to the trial court’s denial to conduct another competency hearing.
*969 In any event, this argument lacks merit. La. C.Cr.P. art. 643 provides in part: “The court shall order a mental examination of the defendant when it has reasonable ground to doubt the defendant’s mental capacity to proceed.” “The fact that a defendant calls his capacity to proceed into question does not for that reason alone require the trial court to order a mental examination.” State v. Carter, 10-0614 (La.1/24/12), 84 So.3d 499, 518, cert. denied, — U.S. -, 133 S.Ct. 209, 184 L.Ed.2d 40 (2012). Rather, “the appointment of a sanity commission to inquire into the mental condition of the accused is addressed to the sound discretion of the trial judge, and a reviewing court will not disturb the judge’s ruling absent a showing of abuse of discretion.” Id.
In the present case, at the time defense counsel requested another competency hearing on September 17, 2012, a little more than a month had lapsed since the trial court originally found defendant competent on August 15, 2012. |12The defense did not present to the trial court any indication that defendant’s competency had deteriorated during that period. Instead, defense counsel raised the same concerns as before: that defendant believed his constitutional rights had been violated, entitling him to a dismissal of his case. Although defense counsel asserted at the hearing on September 17, 2012, that defendant believed counsel to be an agent of the state, it appears this stemmed from defendant’s continuing mistaken belief that his rights had been violated, and defense counsel’s contrary explanation that his rights had not been violated convinced defendant that counsel was not representing defendant’s interests.
We find that a layman’s misunderstanding of legal procedure — which in this case is the basis for defendant’s alleged incompetence — does not render him legally incompetent to stand trial. We therefore conclude that the trial court did not abuse its discretion in refusing to conduct a second competency hearing.
Defendant’s assignment of error is without merit.
We have reviewed the record for errors patent according to the mandates of La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Wetland, 556 So.2d 175 (La.App. 5th Cir.1990), and find the following which merits attention.
There is an error in the “State of Louisiana Uniform Commitment Order.” There are two Uniform Commitment Orders included in the record of this appeal, which is defendant’s second appeal. One is dated January 13, 2014, while the other is dated March 19, 2014. We find that the latter controls in this matter. However, this Uniform Commitment Order incorrectly reflects the adjudication date as January 13, 2014 and the sentence date as March 19, 2014. The record reflects that the jury returned its verdicts on October 16, 2012, and that, on remand, defendant was sentenced on January 13, 2014.
|iaIn order to ensure an accurate record, we remand this matter and order the Uniform Commitment Order be corrected to reflect the correct adjudication and sentence dates. See State v. Long, 12-184 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142. Further, we order the clerk of the district court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to the Department of Corrections’ legal department. La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846 (per curiam). We further order that, in addition to the record copy, a separate copy of this opinion be delivered to the Clerk of Court for the Twenty-Fourth Judicial District Court for the Parish of Jefferson.
*970 CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. This is defendant’s second appeal. His first appeal was dismissed for lack of jurisdiction. State v. Johnson, 13-75 (La.App. 5 Cir. 10/9/13), 128 So.3d 325.

. Four letters addressed to Ms. Julien by defendant were introduced into evidence. In those letters, defendant apologized to Ms. Ju-lien and asked her to “drop the charges.” At trial, Ms. Julien testified that she did not consider defendant's request.

.The doctors' report contained the following conclusions:
■ Results of our examination failed to reveal evidence that [defendant] is currently manifesting any signs or symptoms of a major psychiatric illness. In fact, he came across as *965 a relatively intelligent individual, who appeared to have fairly good familiarity with the workings of the legal system.
[[Image here]]
In reviewing the Bennett criteria, [defendant] had absolutely no problems being able to give excellent quality answers concerning his understanding of the charges and proceedings against him. Likewise, his ability to assist counsel appears to be essentially unimpaired, at least in terms of his psychiatric status. [Defendant] appears to have some points of disagreement with his attorney, and views the legal procedures which have taken place in his case as perhaps not reflecting what he termed “due process.” This-did not appear to be a manifestation of a mental disorder, or an expression of any other mental illness.