699 So.2d 487 (1997)
STATE of Louisiana,
v.
William SILVA.
No. 96-KA-0407.
Court of Appeal of Louisiana, Fourth Circuit.
September 3, 1997.
Rehearing Denied September 30, 1997.
*488 Harry F. Connick, District Attorney, Karen Godail Arena, Assistant District Attorney, Parish of Orleans, New Orleans, for appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for appellant.
WALTZER, Judge.
The defendant appeals his conviction for first degree murder, committed during the perpetration of aggravated rape, and/or an armed robbery, and/or an aggravated burglary. After careful review of the record, the memoranda of counsel, we affirm the defendant's conviction and sentence.

STATEMENT OF THE CASE
The defendant was charged by grand jury indictment with the first degree murder of Deborah Correge, the murder having been committed during the perpetration of aggravated rape, and/or an armed robbery, and/or an aggravated burglary. On 20 July 1994 he entered a plea of not guilty. On 19 September 1994 he changed his plea to not guilty by reason of insanity. On 18 October 1994 a hearing was held to determine whether the defendant was competent to proceed. At the hearing Dr. Sarah Deland testified that the defendant was competent to proceed. The prosecution and the defense stipulated that if Dr. Richoux, the other member of the psychiatric team were called to testify, he would agree in all respects with the findings of Dr. Deland. The trial court found that the defendant was competent to proceed.
After a three day trial, a twelve member jury found him guilty as charged. The next day, the jury was unable to reach a conclusion that the defendant should be put to death. Consequently, the defendant was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. After the defense filed a brief initially and after the State responded thereto, the defense filed a supplemental brief regarding a supplemental assignment of error. We ordered that the record be supplemented with the transcript of the sanity hearing held on 18 October 1994.

FACTS
On 15 August 1993, the victim's boyfriend, Richard Sharpe, found her dead in her apartment at 3316 DeSoto Street. She had been severely beaten and strangled and had been dead for several days. Her night shirt had been pulled above her waist. However, there was no trauma to her vagina, and no seminal fluid was discovered. Although the house was not ransacked, the house was not as neat as the victim usually kept it. Valuables had been left intact. However, one of three rings the victim wore had been removed, and a watch was missing. Initially, Sharpe was a suspect in the crime, but he was absolved.
On 24 May 1994, a group of the defendant's friends went to police headquarters and reported that several nights earlier when they were with the defendant at a bar drinking, the defendant told them he had killed the victim, who had been his next door neighbor. He said that he had gone to her house to help her with her air conditioner, that she had bent over and he had seen her buttocks. He became aroused and started to have sex with her. Whether or not she had given her consent was not clear. During sex, he went "crazy" and began beating the victim in the face numerous times with brass knuckles. *489 He burned his clothes in a smoker at his girlfriend's house.
The victim's face had indentations in the pattern of brass knuckles. Several witnesses testified that the defendant had owned a pair of brass knuckles.
When the defendant was arrested, he immediately confessed after having been given his Miranda rights.
Remnants of clothes were discovered in the smoker. The defendant's friend, Ryan Liner, testified that the defendant had given him the watch and the ring. He, in turn, had given the watch to his girlfriend, and pawned the ring. The watch was identified as the victim's at trial.
The defendant testified at trial, and said that he had killed the victim, but he did not give a reason. He said he could not remember the details of the event.
A psychologist, Mark Zimmerman, testified at trial that he conducted psychological tests at the request of Mulry Tetlow, Ph.D., also a psychologist. The tests revealed brain dysfunction. The defendant's IQ was low, although he was not retarded.
A psychiatrist, Dr. John Thompson, testified he reviewed the following documents: witnesses' statements, the defendant's statement, the screener's report, the autopsy protocol and supplemental police report, the Orleans Department of Criminal Investigation Homicide Unit statement, the New Orleans Police Department Criminal Investigation Bureau report, and the statements of the defendant's friends. Additionally, he met with the defendant. Dr. Thompson testified that the defendant exhibited signs of depression which were not unusual given his situation. However, there were no signs that the defendant suffered from mental disease that would have prevented him from being able to tell the difference between right and wrong at the time he committed the offense. He said that the defendant did not suffer from schizophrenia or manic depression. He examined a report by Dr. Tetlow, which had concluded that the defendant had some schizoid features, but he opined that the features did not meet the diagnostic criteria that would establish schizophrenia.
Dr. Tetlow testified for the defense that he ran a battery of tests on the defendant, and had reviewed a report by Dr. Thompson. Dr. Tetlow said that the defendant had an IQ just above that of a person who suffers from mental retardation. The IQ test alone could not be used to determine the level of the defendant's mental functioning. Other tests revealed that the defendant suffers from a schizophrenic process, although he was reluctant to diagnose him as suffering from schizophrenia. He said the defendant was likely functioning in a "fugue state" at the time of the murder, since he could not remember the details of the events later. He testified that at the time the crimes were committed, in his opinion, the defendant did not know right from wrong, specifically he stated that he thought the defendant "was out of his mind".

ERRORS PATENT
We have examined the record for errors patent and find none.

ASSIGNMENT OF ERROR ONE
During the cross-examination of Dr. Tetlow, the State asked him whether he was aware of all the facts of the case, in an attempt to challenge his opinion and show Dr. Thompson to be better informed. The State asked him how long he had spent examining the defendant before he reached his conclusion, to which he responded a total of fifteen to twenty hours. The State also asked him if he knew the defendant had been prescribed an anti-depressant medication, to which he responded that he did. The State asked whether he had read the police report, and Dr. Tetlow responded that he had read the initial report, but not the supplemental one. He said he had read Dr. Thompson's report, in which he quoted "various sources". He had spoken to members of the defendant's family, but not to witnesses. He knew that the defendant had confessed to two friends, but he did not speak to them. The State then asked how, when Dr. Tetlow had no "knowledge of what went on before the murder, the time of the murder and the description of the murder", he could determine that the defendant did not know right from wrong at the time he committed the *490 murder. He then said that he did in fact know what went on before, during, and after the murder.
The defense complains that the trial court erred in refusing to allow the defense to examine all of the evidence relied on by Thompson in arriving at his diagnosis.
The record shows, that the defendant did not object to being deprived of the evidence before and during trial. Thus, this issue was not preserved for appeal. LSA-C.Cr.P. art. 841; State v. Tupa, 515 So.2d 516 (La.App. 1st Cir.1987).
Even had the defendant entered the requisite objection, LSA-C.Cr.P. art. 719 provides:
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial.
The article contemplates that the State must give the defense the report of a mental examination, which the State has done in this case. This article does not require disclosure of all sources relied on in the report.
There is nothing to suggest that any of the evidence of which the defendant speaks is exculpatory.
As to the defendant's particular complaint that the State should have turned over the supplemental police report, the State is decidedly not required to do so. LSA-R.S. 44:3; State v. Walters, 582 So.2d 317 (La. App. 4 Cir.1991), writ denied, 584 So.2d 1171 (La.1991).
Defense counsel, as well as Dr. Tetlow himself, knew of the identity of the defendant's friends to whom the defendant had confessed, and could have contacted them if they so chose.
Moreover, the defendant does not show how he was prejudiced since in fact Dr. Tetlow testified in detail about his credentials, his ability to make a diagnosis, the several tests he used in reaching his conclusion, and that in fact his diagnosis was a well-informed one.
This assignment of error is without merit.

SUPPLEMENTAL ASSIGNMENT OF ERROR
The defendant, who was adjudicated competent to stand trial, claims he was subjected to the impermissible burden of proof contained in LSA-C.Cr.P. art. 648(A).[1] The United States Supreme Court ruled in Cooper v. Oklahoma, ___ U.S. ___, 116 S.Ct. 1373, 134 L.Ed.2d 498, (1996), that the statutory requirement that the defendant prove incompetency by clear and convincing evidence was unconstitutional. Silva claims that under Cooper the competency determination made in the instant case was no competency determination at all. The defendant deduces from this reasoning that all proceedings after the "competency" determination must be vacated and that the defendant's conviction and the sentence must be reversed.
The defendant is correct that the transcript of the competency hearing does not reflect whether the trial court used the impermissible "clear and convincing evidence" test or the permissible by "preponderance of the evidence" test, and that we must presume the regularity of the trial court proceedings, and that we can further presume that the trial judge applied the statute as written and therefore erred.

LAW AND ANALYSIS
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to *491 understand the proceedings against him or to assist in his defense. LSA-C.Cr.P. art. 641. The two-fold test of capacity to stand trial under this article is whether the accused 1) understands the consequences of the proceedings, and 2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129 (La.1977). Mental retardation or sub-normal intelligence is not in itself proof of incapacity. State v. Lawrence, 368 So.2d 699 (La.1979). The decision as to a defendant's capacity to proceed should not turn solely on whether he suffers from mental disease or defect, but must be grounded in the nature of the charge, the complexity of the case and the seriousness of the decisions he faces. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
Because Louisiana law presumes a person sane and responsible for his actions, the defendant bears the burden of proving he is incapable of standing trial because of mental disease or defect. State v. Bennett, supra.
Although it is true that LSA-C.Cr.P. art. 648(A) was amended to require that the defendant prove by "clear and convincing evidence" that he was incapable of proceeding to trial, prior to this amendment the Criminal Code of Procedure did not suggest a standard by which the defendant had to prove his incapacity; the jurisprudence required a preponderance of the evidence. State v. Bennett, supra. Since the amendment, appellate courts have still referred to the "preponderance" standard; State v. Williams, 26,716, p. 12 (La.App. 2 Cir. 5/10/95), 658 So.2d 703, 709, writ denied 95-2175 (La.2/2/96), 666 So.2d 1091; State v. Bibb, 626 So.2d 913, 927 (La.App. 5 Cir.1993), writ denied 93-3127 (La.9/16/94), 642 So.2d 188.
In Cooper v. Oklahoma, ___ U.S. ___, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) our highest court has held that the States may not require defendants to prove their capacity to proceed by a standard greater than a preponderance of evidence.
The transcript does not make it clear which standard the District Court relied upon in finding Silva competent to proceed. A perusal of the transcript, however, shows that Silva failed to prove his incapacity to proceed even under the lesser standard of the preponderance. Dr. Deland, a psychiatrist, examined the defendant for approximately one hour. She testified that the defendant understood the charges against him, the different pleas to that charge and the consequences of these pleas. She further opined that the defendant understood what his legal rights were, that he could work with his attorney, and that he understood the possible penalty for the crime charged as well as that he understood the role of the various people in the courtroom. Dr. Deland testified that the defendant understood that he could possibly face the death penalty, that he knew he had the right to remain silent. Counsel for the defense, who had already stipulated to her expertise, only elicited testimony to show that Dr. Deland had only testified as an expert on competency issues but had not testified pertaining to the mental condition at the time of the offense. Counsel also was eliciting testimony as to the importance of psychological tests, and the fact that Dr. Deland was not trained to administer these tests. On re-direct examination the State elicited testimony that the defendant would be able to withstand the rigors of trial and would not deteriorate under the stress of the proceedings, could assist in locating witnesses, and take the witness stand in his own defense if he so chose. The State and the defense then stipulated that if Dr. Richard Richoux were to testify, he would testify that the defendant was competent to satisfy the Bennett criteria, in accordance with Dr. Deland's testimony. The trial judge then ruled that the defendant was competent to proceed to trial. The defense did not object that the court had not annunciated the standard it had used to come to that conclusion, nor that the burden of proof of the defendant was constitutionally impermissible.
We cannot say the trial court abused its discretion in finding Silva competent to proceed. The court was able to listen to the expert testimony, but also observed Silva's apparent understanding at the hearing. The *492 record as presented does not undermine the finding that Silva understood the consequences of the proceedings and was able to assist counsel.
We are aware that the Louisiana Second Circuit Court of Appeal in State v. Wilson, 28,403 (La.App. 2 Cir. 8/21/96), 679 So.2d 963 has taken the identical approach we are taking in this case, and has because of the presumptive error of law, reviewed the transcript of the competency hearing de novo to determine whether the defendant proved by a preponderance of the evidence that he was not competent to proceed to trial.
We see no advantage and a tremendous waste of trial court resources in an appellate court remanding to a trial judge for a ruling on a complete transcript such as the one before us, where the defendant presented no contrary evidence whatsoever.
Defendant's supplemental assignment presents no reversible error.
CONVICTION AND SENTENCE AFFIRMED.
BARRY, J., dissents in part with reasons.
BARRY, Judge, dissenting.
The majority performed a de novo review of the transcript of the competency hearing, then concluded that the trial court did not "abuse[] its discretion in finding Silva competent to proceed." The abuse of discretion standard is inappropriate if this Court reviewed the record de novo.
The defendant's competency to stand trial should be determined by the trial court in the first instance. I would remand for the trial court to determine on the present record whether, at the original competency hearing on October 18, 1994, the defendant proved his incompetency to proceed by a preponderance of the evidence. I would reserve the defendant's right to appeal (and his remaining assignment of error) in the event the trial court determines that the defendant failed to prove his incompetency to proceed by the lesser standard of preponderance of the evidence.
I respectfully dissent.
NOTES
[1] LSA-C.Cr.P. art. 648 provides for the procedure after determination of mental capacity or incapacity as follows: A. The criminal prosecution shall be resumed unless the court determines by clear and convincing evidence that the defendant does not have the mental capacity to proceed ... (emphasis supplied).