11 ARMSTRONG, Judge.
On March 16,1995 the defendant-appellant Kenneth Evans was indicted for second degree murder, a violation of La.R.S. 14:30.1. On March 23, 1995 he entered a plea of not guilty. On August 1, 1995 the trial court denied the defendant’s motion to suppress his confession. A trial commenced on October 25, 1995, but a mistrial was declared the next day. On November 14, 1995 the trial court held a lunacy hearing at which the court found the defendant competent to stand trial. The second trial was held on November 20, 1995. At the conclusion, a twelve-member jury found the defendant guilty as charged. On December 20, 1995 the defense counsel filed a motion for new trial, a motion for appeal which was granted, a motion to reconsider the sentence, and a motion to withdraw. On December 28, 1995 the trial court denied the defendant’s motion for new trial. |2He was sentenced to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The court then denied the motion to reconsider the sentence. The defendant now appeals.

FACTS

The first witness at trial was Dr. Paul McGarry, an expert in forensic pathology. He testified that he performed an autopsy on the victim, Carl Jeffrey Mills. The victim had been shot a total of five times. Of these wounds, Dr. McGarry identified two as fatal. One of the fatal wounds entered from the front of the victim’s body just below the rib cage, travelled through the liver and right lung, then exited the victim’s body. The' bullet was found lodged in the victim’s clothes when they were removed for the autopsy. The other fatal wound entered the back of the victim’s left shoulder, went through his neck, tore a hole in the carotid artery, then exited through the victim’s *606 mouth. A total of eight entrance and exit wounds were found in the victim’s body. Dr. McGarry recovered five bullets from the victim’s body and clothing. Dr. McGarry did not see any gunpowder or stippling on the victim. Toxicology tests on the victim’s bodily fluids were negative for alcohol and positive for cocaine; the tests reflected both recent and older use of cocaine.
Officer Millard Green, a Crime Lab technician, testified that one spent pellet was found on the scene of the murder in the 5700 block of Mayo Street in New Orleans East. Kenneth Leary, a stipulated expert in firearms, testified that he examined all six bullets. He was able to determine that the bullet from the scene and one recovered from the victim’s body were fired from the same weapon. He was also able to determine that another bullet from the victim’s body was fired from a different weapon. The remaining three bullets were too deformed to test. According to Mr. Leary, all the bullets were .38 caliber; some were aluminum and Rsome were copper-jacketed. He explained that a .38 caliber bullet can be fired from a .357 magnum weapon, but that a .38 caliber gun cannot fire .357 caliber ammunition.
Officér Doeia Bates of the Seventh District testified that she responded to a call in the 5700 Block of Mayo on December 2, 1994 at approximately 8:00 p.m. The victim was in the street; he had sustained multiple gunshot wounds. She notified homicide and preserved the scene.
Deshone Davis and Alisha Goodwin testified that they were friends of the victim and had been with him on December 2, 1994. The three were planning to attend a dance at Abramson High School that night. In the evening, the three walked to a convenience store then began walking back to Ms. Davis’s house. At some point, the two girls separated from the victim, whom they called Jeff. They did not see him again nor did .they see the murder.
■ Detective Rodney Bailey was the homicide detective assigned to the case. Based on his investigation, he developed the defendant as a suspect. On February 1,1995, after advising the defendant of his rights, he obtained a taped inculpatory statement from the defendant. The tape was played to the jury. The transcription of the statement was filed into the record. According to the defendant’s statement, earlier on the day of the murder, the victim, who is referred to as Carl, and “Butch” had an argument. Butch told the defendant that he was going to shoot Carl that night. When night came, Butch and the defendant were riding bikes. The victim got on the handlebars of Butch’s bike in the belief that he was getting a ride home. Butch stopped his bike, told the victim to get off while Butch got something out of his pocket, then Butch “took out his gun and shot him 5 times in his back;” The defendant admitted that he then shot at the victim two times, and he and Butch rode off after the shooting.
14The State presented one eyewitness to the shooting. That witness was Bemette Darby who testified his nickname is “Butch.” He testified that he knew the victim and the defendant; the defendant’s nickname is “Joker.” According to Darby, it was the defendant who argued with the victim on the morning of the murder; the argument was about drugs. Darby testified that the defendant shot the victim with a .357 magnum gun. Darby denied having a weapon or shooting the victim; he also admitted that the victim did not have a weapon. Darby did admit that he entered a guilty plea in Juvenile Court to a reduced charge of manslaughter of the victim, but- he denied that he was offered anything in exchange for his testimony. Darby also admitted making a statement to the police in connection with the victim’s murder. That statement was not introduced at trial because of a defense objection.[1] On cross-examination, Darby testified that he was thirteen at the time of the murder and that he often sold crack cocaine in the neighborhood of the shooting. He also stated that, three or four weeks before the murder, he loaned the victim $200.00 which he had made selling cocaine. At the time of *607 the victim’s murder, Darby had not been repaid. Darby explained that he did not expect the victim to repay him the money because it was a gift for the victim to purchase clothing because the victim had just gotten out of jail.
In the defendant’s inculpatory statement, he told Detective Bailey that the argument between Butch and the victim involved rocks of crack cocaine which Butch had given the victim to sell so that the victim could “get on his feet” because he had just gotten out of jail. On the day of the murder, the victim had neither the money he owed Butch nor did he have the crack cocaine and that was what the two argued about.
IsNo weapons were ever found or introduced at trial. The defense presented no witnesses.

ERRORS PATENT REVIEW

A review of the record for errors patent reveals one. The defendant filed his motion for appeal a week before he was sentenced, and it was immediately granted by the trial court. Although a defendant can take an appeal only from a conviction and sentence, this Court has held that an appeal taken prior to sentencing will not be dismissed “because ‘[dismissing the appeal would simply result in a delay of the appellate process and hinder defendant’s right to appeal.’” State v. Warren, 538 So.2d 1036, 1037 (La.App. 4th Cir.1989), quoting from State v. Martin, 483 So.2d 1223, 1225 (La. App. 4th Cir.1986). This error is harmless.

ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant contends that the trial court erred in, requiring him to prove his ineompetency by clear and convincing evidence and, thus, this matter must be remanded to the trial court for a de novo determination of his competency, citing State v. LeBlanc, 96-0296 (La.App. 4th Cir. 11/12/97), 702 So.2d 377. The State in its brief suggests first that the defense failed to object to the trial court’s finding that he was competent; therefore the issue was not preserved for review.[2] The State further argues that a de novo review of the record by this Court establishes that the defendant would have been found competent under any standard.
In LeBlanc the majority opinion stated:
As amended in 1990 (La.Acts, No. 755, § 1), La.C.Cr.P. art. 648A provides in pertinent part: “The | (¡criminal prosecution shall [not] be resumed unless the court determines by clear and convincing evidence that the defendant does not have the mental capacity to proceed.” In State v. Frank, 96-1136 (La. 10/4/96), 679 So.2d 1365, 1366, the Louisiana Supreme Court declared:
The Supreme Court’s decision in Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996) makes clear that La.C.Cr.P. art. 648(A), as amended by 1990 La. Acts. No. 755, violates the Due Process Clause to the extent that it requires the defendant in a criminal prosecution to prove his incapacity to proceed only by a clear preponderance of the evidence, (citations omitted).
The defendant’s lunacy hearing was held September 27, 1994 when La.C.Cr.P. art. 648(A) required clear and convincing evidence to prove incompetency. The record does not show what standard the trial court applied. There is a presumption of regularity in judicial proceedings. State v. Harris, 93-1098 (La. 1/5/96), 665 So.2d 1164; State v. Davis, 559 So.2d 114 (La. 1990). We therefore presume that the clear and convincing standard in La. C.Cr.P. art. 648 was applied. However, the defendant may not have met the preponderance of the evidence standard. We therefore remand this case for a determination by the trial court as to whether the defendant proved by a preponderance of the evidence that he was not competent to proceed on September 27,1994.
If the trial court determines that the defendant was competent to proceed on *608 September 27, 1994 under the preponderance standard, the defendant’s right to appeal is reserved. '
State v. LeBlanc, pp. 3-4, 702 So.2d at 378.
In State v. Silva, 96-0407 (La.App. 4th Cir. 9/3/97), 699 So.2d 487, the defendant made the same assignment as in LeBlanc: that the trial court had considered the evidence of his competency under the impermissibly high standard of clear and convincing evidence. However, rather than remanding for the trial Rcourt to make a determination of whether the defendant would meet his burden of proving incompetency under the lesser correct standard, the Court in Silva conducted its own de novo review of the transcript of the competency hearing and concluded that, even under the lesser standard, the defendant had failed to meet his burden. The Court in Silva stated that it decided to conduct a de novo review, as had the Second Circuit in State v. Wilson, 28,403 (La.App. 2 Cir. 8/21/96), 679 So.2d 963, because it saw “no advantage and a tremendous waste of trial court resources in an appellate court remanding to a trial judge for a ruling on a complete transcript such as the one before us, where the defendant presented no contrary evidence whatsoever.” Silva, p. 10, 699 So.2d at 492.
In the instant case, the competency hearing was held on November 14, 1995, prior to Cooper and Frank. Nothing in the transcript indicates what standard of proof was used by the trial court; therefore, under the principle of the regularity of judicial proceedings, it must be presumed that the court employed the higher statutory standard of clear and convincing evidence. In the interest of judicial econqmy, we adopt the approach in Silva and conduct a de novo review of the lunacy hearing transcript and exhibits in the record.
As this Court stated in Silva, p. 7, 699 So.2d at 490-91:
Mental incapacity to proceed exists when, as a result of mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. LSA-C.Cr.P. art. 641. The two-fold test of capacity to stand trial under this article is whether the accused 1) understands the consequences of the proceedings, and 2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 .S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129 (La.1977). Mental retardation or sub-normal intelligence is not in itself proof of incapacity. State v. Lawrence, 368 So.2d 699 (La.1979). The decision as to a defendant’s capacity to proceed should not turn solely on whether he suffers from mental disease or defect, but must be grounded in .the nature of the charge, the complexity of the case and the seriousness of the Igdecisions he faces. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983).
Because Louisiana law presumes a person sane and responsible for his actions, the defendant bears the burden of proving he is incapable of standing trial because of mental disease or defect. State v. Bennett, supra.
At the lunacy hearing held November 14, 1995, Dr. Malik, an expert in forensic psychiatry, testified that the defendant was interviewed for forty-five minutes that day. Dr. Malik conducted a Bennett evaluation and took a history from the defendant. The defendant told Dr. Malik that he had never had any contact with any mental health professionals. Dr. Malik further testified that, based on his evaluation of the defendant, no IQ test was performed because the defendant did not give any indication of mental retardation. Dr. Malik then gave as his opinion that the defendánt was competent under' the Bennett criteria to stand trial (Id.).
Dr. Malik was questioned by the defense on cross-examination regarding documents from the La. Dept, of Education which indicated that in 1990 and 1992 the defendant was identified as “mentally handicapped” and placed in special education classes.[3] Dr. Ma- *609 lik reviewed the documents and stated that the evaluations were not done by any psychologist or psychiatrist, which would be consistent with the defendant’s statements to him that he had never had contact with a mental health professional. After Dr. Ma-lik’s testimony, the parties stipulated that the other expert who examined the defendant, Dr. Deland, would have the same opinion regarding the defendant’s competency as Dr. Malik had.
IsAt the conclusion of the hearing, counsel for the defendant informed the court that the defendant’s family had given him approval to retain the services of a clinical psychiatrist to prepare an evaluation of the defendant “for his ability to freely waive his right[s] and give this inculpatory statement.” Counsel requested the opportunity to reopen the motion to suppress the confession hearing for that expert’s testimony; the trial court agreed to allow the defendant to do so if it could be done prior to the scheduled trial date. However, the record does not indicate that the defense ever presented the expert to the trial court.
We find no error in the trial court’s ruling finding the defendant competent to proceed. The defendant had absolutely no history of mental illness. Although at one time he was in special education classes, low intelligence in and of itself does not render a defendant incompetent. In any event, the two experts who evaluated the defendant saw no evidence of mental retardation which would warrant even giving the defendant an I.Q. test. Notably, the defense never presented any testimony of an expert to counter the testimony of Dr. Malik and the stipulated testimony of Dr. Deland, despite having informed the trial court that the expert was preparing to evaluate the defendant.
For the foregoing reasons, we affirm the defendant’s conviction and sentence.

AFFIRMED.

. The statement is in the record. It was taken after the defendant had made his statement. Darby denied having a gun or shooting anyone.

. The State relies on cases that pertain only to matters which occurred during trial. La.C.Cr.P. art. 841 B provides that there is no requirement of an objection to a court's ruling on a written motion. Although no written motion for a lunacy hearing was filed in this case, an analogy appears appropriate to an oral pretrial motion which results in a hearing.

. According to the defense counsel’s statement at the lunacy hearing, these records were filed into the record as exhibits during the defendant’s first trial, which had ended in a mistrial for reasons *609 not reflected in the record because the minute entry of October 26, 1995, the second day of the trial, is missing.