| JONES, Judge.
Defendant-appellant, Charles Picot, was convicted of the offense of second degree battery, a violation of R.S. 14:34.1, and was sentenced to five years at hard labor. The State filed a multiple bill, and the court subsequently found appellant to be a second offender, vacated his original sentence, and resenteneed the Defendant to serve ten years at hard labor. From this action, the Defendant appeals and argues that the trial court used the wrong legal standard to determine his competency to proceed to trial. We affirm appellant’s conviction, but vacate his multiple bill sentence and reinstate his original sentence of five years.
On the morning of July 6, 1995, Elaine Polk and the victim, Mark Young, were walking on Simon Bolivar Boulevard when Ms. Polk was hailed by her child’s teacher. While Ms. Polk was speaking with the teacher, Young sat down on the curb. Suddenly, Young heard Ms. Polk yell a warning, and when Young turned around, he saw Picot. Immediately, Picot struck Young twice in the lower back with an aluminum bat. Young got up and told Picot to stop, but Picot continued to hit Young on the leg. Young then grabbed for the bat, and Picot hit him in the head. Young grabbed a bottle and threw it at Picot who retreated and |2ran around the corner. When Picot returned, Young threw another bottle at him, and Picot fled from the scene. The police were called, and Young went to the hospital, where he received seven staples to close his head wound.
Picot was the ex-boyfriend of Ms. Polk and the father of at least one of her children. However, at the time of the attack Ms. Polk was involved with Young. Young testified that he had seen Picot twice before, but *519 denied provoking or threatening Picot, and Young denied owning a gun.
Ms. Polk testified she was standing with her back to Young when her child’s teacher called a warning. Ms. Polk turned and saw Pieot carrying a bat and walking towards Young. She also testified that Pieot hit Young, and continued hitting him even although Young kept telling him to stop, and did not provoke the attack. Ms. Polk explained that her relationship with Picot had ended due to fighting, but insisted that she was not upset about the breakup.
Ruby Picot, appellant’s mother; testified about the stormy relationship between her son and Ms. Polk. She testified Ms. Polk warned her to tell Picot to leave Young alone and she “would let everything drop”, but Ms. Picot insisted that she did not know to what Ms. Polk was referring when she made this statement. She went on to say that Ms. Polk and her son had physical fights in the past, and that Ms. Polk had her son jailed in the past, but then had posted bail for him. She also testified Young had called her house prior to this incident, and had threatened to blow Picot’s brains out if he caught up with him.
Nicholette Jones, Picot’s niece, testified that once while she was at Ms. Pieot’s house, Young pulled up in a car, got out brandishing a gun, and stated he was looking for Picot. Ms. Jones could not remember when this incident happened, but she admitted that no one contacted the police concerning this incident. Katina Nash, Picot’s present fiancee, testified Ms. Polk approached her while they were in municipal court and threatened to stab her with a knife.
|3The court refused to allow Picot’s brother Michael to testify because he had violated the court’s sequestration rule.
Charles Picot denied hitting Young with a bat, but stated that a few days prior to this incident Ms. Polk telephoned him to try to “work things out” with him. However, Young then grabbed the telephone, told him they had obtained a peace bond against him, and threatened to shoot him. Picot also testified that on the day of the fight, he was returning empty handed to his apartment after visiting his children in a project when he saw Young sitting behind an abandoned car, looking up at Picot’s apartment building. As Picot approached him, Young jumped up and exclaimed that Picot had “finally made it home.” Young also warned him that he (Young) had told Picot not to call Ms. Polk. Picot denied returning Ms. Polk’s calls, and they began arguing. Picot testified Young threw a punch, and he hit Young. He denied using a bat or even possessing a bat, and he theorized Young injured his head when he fell and hit either the abandoned car or the sidewalk during the scuffle. He testified that he fled the scene when he saw Ms. Polk come from the stairwell of his building because he knew she carried a razor blade.
Picot testified that prior to this incident Ms. Polk had scratched her own arm, and then she had called the police and had him arrested for injuring her. Picot further stated that he was arrested for Young’s injuries when he appeared in municipal court later that day for fighting with Young. He contended Ms. Polk offered to drop the charges against him if he would “just act right.” Picot admitted having prior convictions for possession of a stolen car transmission and for misdemeanor criminal damage to the inside of his boss’ building.
A review of the record for errors patent reveals there are none.
Jil.
By his first assignment of error, Picot contends the trial court erred by finding him competent to proceed to trial. Defendant asserts that the statutory standard for determining competency was later found to be unconstitutional, and he argues that the trial court must have employed this standard, which set a higher burden upon him to show his incompetence to proceed. He asks this court to remand this case to the trial court for a determination of whether he showed his incompetency based upon the correct standard.
In Cooper v. Oklahoma, 517 U.S. 348, 116 S.Ct. 1373, 134 L.Ed.2d 498 (1996), the United States Supreme Court held that a state may not require a criminal defendant to prove his incompetency, or mental incapacity *520 to proceed, by clear and convincing evidence. In State v. Frank, 96-1136 (La.10/4/96), 679 So.2d 1365, the Court stated that based on Cooper, La.C.Cr.P. art. 648(A) violated a defendant’s due process rights to the extent that it required a defendant to prove his incompetency to stand trial by clear and convincing evidence. The court further stated that Cooper returned Louisiana to the jurisprudential rule that a criminal defendant must prove his incompetency only by a preponderance of the evidence. The court remanded the case to the trial court for a retrial of the competency hearing.
In State v. LeBlanc, 96-0296 (La.App. 4 Cir. 11/12/97), 702 So.2d 377, after presuming that the trial court applied the clear and convincing evidence standard, this Court remanded the case for a determination by the trial court as to whether the defendant proved by a preponderance of the evidence that he was not competent to proceed. However, in State v. Silva, 96-0407 (La.App. 4 Cir. 9/3/97), 699 So.2d 487[1], this Court conducted its own de novo review of the Istranscript of the competency hearing and found that the defendant failed to meet his burden even under the lesser, correct standard, and this Court based its decision to conduct a de novo review upon State v. Wilson, 28,403 (La.App. 2 Cir. 8/21/96), 679 So.2d 963, wherein the court conducted its own de novo review because it saw “no advantage and a tremendous waste of trial court resources in an appellate court remanding to a trial judge for a ruling on a complete transcript such as the one before us, where the defendant presented no contrary evidence whatsoever.” Id. at p. 12, 699 So.2d at 492.
Here, the record contains the transcript of the lunacy hearing held December 12, 1995. The transcript does not indicate what standard the trial court used to determine incompetency. Under the principle of the regularity of judicial proceedings, it must be presumed that the trial court used the higher statutory standard of clear and convincing evidence. We apply the Silva standard and review defendant’s competency de novo.
La.C.Cr.P. art. 641 provides that mental incapacity to proceed exists when, as a result of a mental disease or defect, a defendant presently lacks the capacity to understand the proceedings against him or to assist in his defense. The two-fold test of capacity to stand trial is whether the defendant: (1) understands the consequences of the proceedings; and (2) has the ability to assist in his defense by consultation with counsel. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); State v. Bennett, 345 So.2d 1129 (La.1977); State v. Silva, 96-0407 p.7, 699 So.2d at 490-491.
Here, the State presented the testimony of one psychiatrist and the stipulated testimony of a second psychiatrist, which would have tracked that of the first psychiatrist. The psychiatrist testified he examined the appellant and found no specific mental disease or defect. The psychiatrist testified it was his opinion that the appellant “is able to understand the legal proceedings currently pending and is | sable to assist counsel in his defense.” The psychiatrist testified that Picot might have had “some personality pathology, but,' of course, the same could be said of a large segment of the population”, and he found no indication of a “major medical illness.” When asked about any prior psychiatric evaluations, the witness testified that the only indication of any prior evaluations was statements made by Picot that he had once seen a psychiatrist two to three years earlier in connection with an application for social security disability. However, it was not clear to the psychiatrist whether the disability concerned insanity or whether indeed an evaluation had been made at that time. The defense presented no evidence at the hearing.
Based upon the transcript, as in Silva it appears Picot did not meet even the lesser burden of showing his incompetency by a preponderance of the evidence. The defense presented no evidence of incompetency. Thus, even applying the correct standard, Picot failed to meet his burden, and the trial court correctly found him competent to proceed. This assignment of error has no merit.
*521 ii.
By his second assignment of error, Picot contends the trial court erred by finding him to be a second offender because the State failed to prove he was the same person who was convicted of the prior offense. A review of the transcript of the multiple bill hearing shows the State did not introduce any evidence to prove his identity. The transcript begins with Picot’s contention that the cleansing period had lapsed between the expiration of his sentence on the prior conviction and the commission of the present offense. The court later determined that the cleansing period had not expired.[2] The court then found Picot to be a second ^offender based upon documents it had before it. However, there is no indication that the State actually introduced these documents at the hearing.
More troubling is the fact that the State did not introduce any evidence to prove Pieot’s identity as to the prior conviction. When defense counsel reminded the trial court that the Picot did not admit to his identity, the court responded: “That wasn’t an admission, this was a hearing. He stated his position and the Court disagreed. I think the State has proved its case.” However, even if the State had introduced the documents of the prior conviction, it did not present any evidence which actually linked Picot to this prior conviction. In its brief, the State concedes this point. The State notes Picot did not file any written objections to the multiple bill. However, any written objections would necessarily go to the sufficiency of the State’s evidence to prove the prior conviction. Picot would have no way of knowing prior to the hearing that the State would fail to present any evidence to prove identity. Because the State failed to present any evidence of identity, and Picot specifically noted he was not admitting his identity, the State failed to meet its burden at the multiple bill hearing. As noted by this court’s decision in State v. Henry, 96-1280 p. 7 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 325-26: “To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. State v. Hawthorne, 580 So.2d 1131 (La.App. 4th Cir.1991).” See also La. R.S. 15:529.1; State v. Brown, 514 So.2d 99 (La.1987)[3]. This assignment has merit.
IsAccordingly, Picot’s conviction is affirmed, his multiple offender adjudication and sentence are vacated, and his original sentence of five years at hard labor is reinstated.

CONVICTION AFFIRMED; MULTIPLE BILL SENTENCE VACATED AND ORIGINAL SENTENCE REINSTATED.

. Writ den. 97-2578 (La.1/30/98), 709 So.2d 704.

. Although Picot, defense counsel, and the court were under the impression that the cleansing period was five years, R.S. 15:529.1 as it existed at the time of the offense provided a seven-year cleansing period.

. Cert. den. Brown v. Louisiana, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988).